It is 1-4-5-2-3-7. Varsity Brands, Inc. et al. v. Star Athletica, LLC. Oral argument, 15 minutes per side. Mr. Garrison for the appellants. Good morning. May it please the Court, my name is Grady Garrison of the Baker Donaldson Memphis office, here on behalf of the varsity entities. Mr. Garrison, it's hard to hear you. I'm sorry, I'm having a bit of a throat problem this morning, Your Honor. I'll try to speak up. May it please the Court, we would like to reserve three minutes of our time for rebuttal. Fine. Am I doing better, Judge? Can you hear me a little bit better now? Yes, thank you. We today urge this Court in its de novo review to reverse the District Court's grant of summary judgment to the defendant, Star Athletica, and its failure to deny all of Varsity's motion for summary judgment, and after that to grant summary judgment in favor of Varsity. The key issue on appeal is the separability of two-dimensional designs appearing on the surface of cheerleading uniforms. As a roadmap for my discussion, I ask the Court to consider four things. Number one, what this case is and what it is not about. Number two, how the District Court failed to properly apply the presumption of validity that supported Varsity's copyrights by virtue of its registrations of the two-dimensional art designs at issue. Thirdly, why the District Court's new test for separability is unworkable and is contrary to this Court's binding precedent. Fourthly, how the record evidence confirms the separability of the designs with and without considering expert testimony. Varsity does not claim copyrightability of any clothing as clothing, whether it be uniforms, jackets, or any other three-dimensional items for that matter. Rather, what it claims protection for is the two-dimensional art appearing on the uniform within the boundaries of the outer perimeter of the uniform. Does it matter whether the design is sewn onto the blank cheerleader uniform or printed on it? In other words, don't you have a stronger case if it's just printed on it? It does not matter. I wouldn't say it's a stronger case. It's easier to explain. I think that's an important distinction. If it's printed on or if it is appliqued as another means of attaching it physically or if it's embroidered, those are easier concepts to grasp than the conceptual separability of the designs from the uniforms, which we are here to persuade the Court to find today. Mr. Garrison, let me ask you sort of a broader question that just is troubling me. It seems to me that if copyright law says what you say it does, that there would be hundreds if not thousands of these cases that designers who attach a lot of value to their designs of pants, golf shirts, whatever it is, that there would be all kinds of claims that their copyright in that article of clothing had been copied or violated by somebody else. So what sort of strikes me, and this is what I'd like you to address, is that it almost tells me that there seems like there are so few cases here that the law really couldn't be what you say it is. Well, Your Honor, I submit that what those designers of dresses and pants and other such items would be claiming would be protection for the three-dimensional garments, as opposed to what we are claiming, that is, the two-dimensional art appearing on the garments, which is separable from the garments. But why couldn't somebody make a claim like you're making for virtually anything that appears on the three-dimensional object, whether it's a cheerleading uniform or a band uniform or a golf shirt or anything else? Why doesn't this come up a lot? Your Honor, I can't say why it does not come up, but I will submit that if it is protectable to the art, then if it's placed on a useful article, such as a uniform or a jacket, then it can be protectable. Why it has not come up, I do not know. Is potentially the answer, at least this is probably what your opponent is going to say, doesn't come up because nobody really ever tries to protect articles of clothing because they know they're not protectable. So in other words, that argument, if it was true, would say you're creating a separability argument. I'm not suggesting you're creating the theory, but you're applying it to something that it just intrinsically doesn't apply very well to when you're talking about articles of clothing. Well, I think part of the problem here is that there just seems to be, the case law is very cluttered and confusing for one thing. And further, there seems to be this inherent hostility to protecting clothing without the cases really saying why. And I don't think it is ever very clearly articulated in the cases what it is specifically that the plaintiff is seeking to protect. Thinking about clothing, so there's this line of clothing, Lilly Pulitzer, which has very distinctive designs and colors. Have they sought copyright? Do they have copyright protection for their designs? Or any other? There are all these beautiful designs that various artists have done that have then been incorporated in clothing. Are there any examples where there are at least copyrights existing in the copyright office? I don't know whether there are copyright registrations for those or not, but as the court knows, the copyright exists separate and apart from an actual registration. It subsists from the placement of the art in the tangible medium of expression. So there, too, I would say the distinction is that the shape of the Lilly, what's the last Pulitzer? Pulitzer dress. Because as I understand it, there's a distinction between fabric designs which are copyrightable and dress designs which are not copyrightable. Is that right? That is right, Your Honor, and it's 2D art versus a three-dimensional object. It is the placement of 2D protectable art on a three-dimensional. That you're claiming protection for. That is correct. But basically your argument is you can take the object and simply say, well, it's just covering the body, so anything you put on it then to make it distinctive is separable. But that just doesn't seem like that could be the law. Your Honor, I would say not anything, only otherwise protectable two-dimensional art could be. Why isn't anything you put on a three-dimensional object, why can't anything you put on a three-dimensional object be reduced to a two-dimensional drawing or photograph? Well, I submit that it can, but that to me does not detract from the copyrightability of the 2D art. In Mazur v. Stein, in copyright regulations following that, the intended use of the copyrighted work does not affect its copyrightability. One thing that confused me about the district court's opinion was that he was talking about, as I understand it, the function of a cheerleading uniform included the function of identifying the particular team. That's correct. Was he, the district judge, wrong on that? Because the reason why I'm asking is this definition in the statute in section 101 asks the question whether the pictorial work incorporates pictorial features that can be identified separately from and are capable of existing independently of the utilitarian aspects of the article. If you define the utilitarian aspects of the article as including identifying the cheerleading team, then don't you lose? No, I do not, Your Honor. And that's where I think the judge got off track in his analysis, ending up with this Platonian-inspired freeness equals cheerleading uniformness approach. What that would require would be a repudiation of this court's ruling in the Gay Toys case. Where there, Honorable Judge Bailey Brown, considered the statutory definition of a useful article, and that is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. In doing so, rejected the invitation to expand this intrinsic utilitarian function of an article to encompass aesthetic and informative functions. In this case, the court determined that toy airplanes are not useful articles. And in doing so, rejected the district court's reasoning that the toy airplanes possessed utilitarian and functional characteristics, thereby rendering them useful. For the reason, according to the district court, that they, quote, permitted a child to dream and to let his or her imagination soar. In other words, this appeal to the imagination, this evocative effect, did not, the court ruled, constitute an intrinsic utilitarian function that would render this non-useful toy useful. Well, we know that the top and the bottom are utilitarian. They cover people's body up. That's correct. So the question is, when you then dress it up with something, is it, does it lose its entire character of utilitarian or is it utilitarian plus something that you can separate away from it? So does it matter if we look at this in terms of it being a cheerleading outfit or a cheerleading outfit that identifies a particular team? Is there a difference? Well, there is a difference, and parsing through your question, Your Honor, first of all, the 2D art should be just as protectable if incorporated into the surface of a cheerleading uniform as it should be if it's incorporated into an iPod cover or tote bags, things of that sort. The intended use should not affect the protectability of the work. But here, what the team identity function is saying is that this communicating of information, this identifying the members as belonging to a team or this evoking something. Or being a cheerleader. Or being a cheerleader, evoking the concept of cheerleader, Gatoy says that is not a utilitarian consideration that may be taken into account. And for that reason here, that evocative or evoking function of the concept of cheerleading does not render these 2D designs on the uniforms utilitarian and non-functional. I urge the court to really consider intensely the ruling in Gatoy's because I think it supports precisely what I'm saying is that this circuit we submit has not adopted whatever nomenclature you want to use, has not adopted team identity function, decorative function, or any other kind of evocative function as defeating the copyrightability of the work. And that's where we are with the state of the law in this circuit. I just have one question for clarification. Do I understand correctly that some of your customers in effect, or maybe all of them, sort of design their own uniforms in terms of what's on them? By and large, your honor, the great majority of the designs, certainly including the 5 at issue here, were designed by in-house varsity employees. There is an availability allowing a customer to suggest that it wants certain features to show up in a uniform. Okay. But it's not like NFL stores and whatnot that they produce everything and you buy it just what it is. Your customers can have some input, can't they? They can. But there too, I think the question is there they are creating artistic expression when they ask for what they want. What you really get into is if they do that and you make it, who owns the creative artistic expression? Well, you're only claiming copyright on 5 designs? In this case, your honor, yes. And you're telling us that your company, obviously you're the lawyer, but your company designed these 5 as opposed to customers designing them and there being a problem. That is correct. We don't think there's any issue there. In fact, it has over 200 other, well, hundreds of such designs, 200 of which are registered. Your company does. That is correct. And I hope the court doesn't lose sight of the fact that these designs are entitled to the presumption created by the granting of the copyright certificates by the Copyright Office. And there's nothing below that rebutts that presumption. Your red light is on, so thank you very much. Thank you. Mr. Rafferty? Thank you, your honor. May it please the court. I'm Michael Rafferty. I'm here from Memphis, along with Stephen Crosby, representing the appellee in this case, Star Athletica, LLC. Your honors, useful articles, such as garments, are not eligible for copyright protection. And I think, Judge McKee, that goes right to the point that you were making with Mr. Garrison, that that's why you don't see these cases. In fact... But they did get registered. That is true, your honor. Maybe nobody else just tries to register. They're not as smart as Varsity. Well, they may not be as resourceful or maybe as bold. What about, you know, Lilly Pulitzer's been in the news because Target was selling them their very famous women's clothing store. Have they obtained copyrights on their designs? I'm not aware of that, your honor. And what I would say to the court, as far as the registration, what they registered are the two-dimensional depictions of these uniforms or the designs of the uniforms. And that's the problem that we've got here. And Judge Cleveland identified it. So what does that mean? If they registered the two-dimensional design, you can't put that two-dimensional design, for example, in your catalog because it's still two-dimensional? If, in fact, it's a valid copyright, yes, your honor, that would be the case. But that's not what they've alleged here. They've alleged that we violated their registered copyrights by manufacturing uniforms that look like what's depicted in their two-dimensional artwork. Well, if the sublimation method is used, so that, as I understand it, that is you take a design on two dimensions and you use some kind of inking process to ink it on fabric, why would that not be protectable, copyrightable art? Well, your honor, for the very reason that, well, let me answer it this way, if I may. The sublimation issue is certainly a better argument for Varsity's position. Right, and so it's harder for you, and I want you to try to answer the hard one. Well, and what I would say is that it's really an academic discussion here because these five designs were never ever made in sublimated material, and they were only manufactured, apparently, for this lawsuit because we asked for those in discovery and they weren't produced. There was one in the box of stuff. That's correct, your honor. It was produced because of this lawsuit and their response. Okay, but wouldn't that be protected, copyrightable? Why not? For the very reason that Judge Cleveland said in his opinion, your honor, which is that you still have the identity function that is present regardless of whether or not this is on the surface or if it's a constructed cut-and-sew uniform. Why is the identity function something that deprives copyrightability? Are you saying it's part of the useful object? Precisely, your honor. Well, what about this provision in the compendium of the U.S. Copyright Office Practices defining what is a useful article? An item or object is considered a useful article if it performs any inherent or intrinsic utilitarian function other than to inform. Your honor, that is addressed specifically in the Giovanni case. And I would invite the court to look at the addressing of the cases that involve garments because they give the guidance for where this case and it's what Judge Cleveland followed. But in response to your question, they addressed that in the Giovanni case at the very end of the opinion because that issue came up and that question was made. And the statute says in the definition of a useful article if it's not merely to portray it or to convey information. If that were to apply in this instance, then it would completely overwhelm the definition and it would take away the other part of this statute which is what Judge Cleveland focused on which is that you have to separate the usefulness from whatever part of it that isn't useful. And that's what this court has told him he's supposed to do, filter out those things that are protectable from those that are not. Why is it what's not protectable but what is useful is the design of the cheerleader uniform? In the box there's this blank uniform that's white and no gizmos on it of any kind. And that is what Judge Cleveland focused on, Your Honor, in his opinion. It's on page ID 2825. It's the blank canvas. And Judge Cleveland says that, if I may, if you give me just a second I can find it because he says it better than I can. And I thought I had this right available where I could address it. A cheerleading uniform loses its utilitarian function as a cheerleading uniform when it lacks all design and is merely a blank canvas. An examination... I'm sorry, Your Honor. I was just going to say, is he right about that? I mean, isn't that the essence of the debate here? I think that is, Your Honor. And that's why it makes it an academic discussion and it's a more interesting discussion, but it is not one that Judge Cleveland was wrong about or that we lose on. I would submit to the court that, again, it's an academic discussion that is, I'd say, interesting, but it has really very little application to what happened in this case because this isn't what Varsity makes. They don't make sublimated uniforms except when responding to this lawsuit. And 98% of what they make, they say, is the cut-and-sew uniforms, which are clearly driven by a utilitarian function separate from this part of it. Why can you say that as opposed to being style? I mean, stylishly, the cut-and-sewn ones look an awful lot better than the sublimated one. Because that's what they say in their own materials, Your Honor, that it says, in giving the direction to their customers, you've got to be careful. And their own sales reps, their internal documents say, now, remember, if you put a lot of braid on this, it's going to be tighter and fit differently. And that's all about function, Your Honor. And in fact, their own catalogs, the catalogs that are developed by their, I'm assuming, not their legal department, but presumably their marketing, talks about how it's the perfect blend or the merger of form and function. And that's the whole problem that they have, Your Honors, is that they're claiming under the law a fairly narrow protection. Yet what they're really wanting is a much broader protection that would be only available under the more rigid and demanding standard of a patent. And that's what Judge Batchelder mentioned in the Winfield case. So thinking about a somewhat hypothetical, there's this artist Mondrian who has color blocks. And in a sense, that's what's involved in these cheerleader uniforms. So Mondrian, I would think, could have a copyright on his two-dimensional painting of a certain arrangement of color blocks. You're saying that if a dress is made with a Mondrian print, where the color blocks are sewn together, that that's your easier case, your best case, and that you would be able to do that, even copying the Mondrian placement? Well, to engage in that academic discussion, I actually believe there is some law on that specific design. But remember, we're talking... What is the law? Well, I know that there was a case involving that, but I don't know how it actually came out. Because it was a clothing case. And here, what we are talking about are cheerleading uniforms where for a Mondrian gown, it really doesn't matter, I believe, that you'd be able to dance and jump and do all the athletic things that you have to do as a cheerleader. And that's what is important for the non-functionality in terms of identity and as a uniform. You don't think you could do all the cheerleading stuff in the blank design that was in the box? Oh, I assume you can, Your Honor, but it doesn't tell you that you're a member of a cheerleading team by doing... So it all gets back to informing people, the audience and everybody on the field that these are the cheerleaders for the XYZ team. But not merely informing. And that's the distinction. That this is its entire reason for existing. It is what it is. It's the intrinsic nature of it. And it's not simply to convey information or merely to convey information. So that's why I would not be subject to that exception. But that is true. I think that is the toughest part for varsity to explain, and therefore they don't. We've invited them in our filing to say, deal with the identity function of your cheerleading uniforms. And the best they can do is refer to that narrow exception that really has no application here. The taxidermy cases really address that kind of issue because you're talking about an animal's face that is incidental to the rest of what is going on in the taxidermy field. To follow up for a moment on the Mondrian example, wouldn't the Mondrian clearly have value separate from its union with the garment of any kind? I assume so, but I'm not sure I follow where you're going, Judge Guy. Well, it clearly operates independently. It can operate independently of the uniform. Right. That's a good point. And that's what the statute says. If you can take some aspect of a design, of a pictorial or sculptural or graphic artwork, and separate it from its intrinsic nature of it being utilitarian, then it's protectable. And that's what Judge Cleland did. He said, OK, I'm supposed to do that. That's what the statute tells me to do. And I take away the stripes and the chevrons and the Vs and those things, which a varsity designer says those are the basic elements of a cheerleading uniform. If you take those away, you don't have a cheerleading uniform anymore. All you have is a blank silhouette. And so there, as Judge Cleland and I submit correctly concluded, they've merged. You can't separate those things out from them. Whereas in a Mondrian gown, you can separate that to the extent that that's protectable. But then you come back to what Judge McKeague asked about earlier, is why don't you see a lot of these cases? Well, the whole concept of conceptual separability came about sort of quietly through that Mazur v. Stein opinion in 1955. And since then, that triggered Congress to start trying to come up with a way to address that concept of having a useful article that also has a separable non-utilitarian element to it that would be protectable. So my understanding of the Mondrian example is that Mondrian has painted a painting and has gotten a copyright on it. And in the hypo, a dress designer says, ooh, I love Mondrian's work. I'm going to make my dress with a Mondrian print. And so Mondrian is upset about that and wants to sue. And he says, my art is separable because it has a value separate from the utilitarian aspect of the dress. Am I getting that right? Well, yes, except that, of course, that's not what we're talking about when we're talking about cheerleading uniforms. And what we're then coming closer to is the Giovanni case where the Second Circuit says, well, but you know what? It's covering the body in an attractive way. And in that particular instance, it was for a special occasion, for a prom. And you're getting farther out on the scale of where it is you're getting away from the function of just covering the body and the function of covering it in an attractive way. But in our case, we're talking about covering it in a way that shows that you're a cheerleader. But what about the fact that these designs are used on other articles of clothing, such as the warm-up suits? Would that change this, Your Honor? Doesn't it change it? I would submit no, because again, if you take away, you take away the basic elements of a cheerleading uniform, which is what they're in the business of selling, the designer has said what the basic elements are. If you take those away, again, it's blank. There's nothing there. No, but what I'm saying is they have gotten a copyright on this two-dimensional design, and they're alleging that, hypothetically at least, they're alleging that because you can put this design on many different things, in addition to cheerleading uniforms, that there is a separability aspect. That might be a different case if that's what they were alleging we did. But they're alleging we've done it by making cheerleading uniforms. You've only done it on cheerleading uniforms. Correct, Your Honor. And the fact that... So the examples of the warm-up suits were their own products, not your products. As I understand it, as they've alleged it, and that's the best I can answer it right there at this juncture. If hypothetically other people could put the two-dimensional design that they have copyrighted on a mug, a coffee mug, where everybody puts all sorts of designs on that, wouldn't that show that the design had value separate from the cheerleading uniform? Well, what it would show is that you have a different case. And that... Is the answer partly that you're taking this cheerleading design on the uniform and you're just putting it on another article of cheerleading clothing? Does that answer the question? I mean, if you could take this cheerleading design and put it on something that people are then going to wear to work, that might be a different case. Exactly. Why couldn't you do that? Make it into a dress instead of a cheerleading top by just lengthening it? Well, again, it is all a very academic discussion. But that's what we do here. We do academic discussions to try to figure out if we go your way, are we going to really have problems when the next person wants to make a dress? Well, but what we're asked to do, what Judge Cleveland was asked to do and what he did is address what their actual allegations were. And the allegations aren't that we're putting anything on a mug or that we're putting it on anything else, that we're manufacturing cheerleading uniforms and that crystallizes what the case is all about. I suppose you could take the design on the prom dress and you could make it into a cocktail gown. So the question is would you come up with a different answer if somebody would do that? It seems to me you take that cheerleading outfit and you put it on an outfit you're going to wear to work, you're going to look like an idiot and nobody's going to buy it. Well, and I think that's... As Judge Moore said, under breath depends on where you work. It's probably a good question. Well, there are many variables, Your Honor, but again, I think that brings you to the Galeano case which talks about clothing being, one of the tests being whether something is marketable for the purpose that it helps define whether it's separable and that's what Judge Cleland said. You can't separate these things. The statute tells me I have to look at this and figure out or see if it can stand alone and exist independently, and you can't because if you take away the basic elements, what you've got is a blank canvas. Thank you. Your red light is on unless anyone has a question. Thank you, Your Honor. The court heard that Varsity manufactured sublimating uniforms for this lawsuit. That's not correct, but it's neither here nor there. Whether or not it did that is not the issue. What does its ability to make those sublimated uniforms incorporating the same designs that are on the cut-and-sew uniforms what is the importance of that? Well, it goes to show, again, the separability of the 2-D art in question. It does seem to me arguably important because there are cases apparently that says you can get a copyright on fabric and so if somebody uses that fabric to make any number of different items that could violate a copyright even though it started out two-dimensional it's then the fabric is placed in a three-dimensional object. But I don't read you even really claiming that what you are producing here is a cheerleading fabric that then is turned into a dress. You don't say you do that, do you? Well, no, we characterize what we do as creating uniforms that apply our two-dimensional art. Fabric design is two-dimensional art. I got that, but that doesn't answer the question. You're not really claiming a fabric copyright here, are you? Two of our registrations are for fabric design, Your Honor. Is the cheerleading design something on a piece of fabric that you can buy this fabric and then you can make different things out of it? That could be done, but Varsity is not in the business of doing it. Varsity could easily create rolls of fabric that would be fabric design in quotes that could be sold, but it has chosen not to do that. It's not in that business. How could that even work? If the fabric has all these different stripes and all this other stuff on it, it's got to be different sizes to fit different size cheerleaders. Again, it's just not like one fabric size fits all. You just turn it into a cheerleading uniform. Well, there may be some production issues there, Your Honor, that I'm not aware of one way or the other, but to your point, these things could be produced in quantities of rolls as regular fabric design is. We don't do that. We're not in that business. At the same time, on this point of sublimation, Varsity has sold millions of dollars of sublimated uniforms. This was not some undertaking done only for the purpose of this lawsuit, and that fact is established in Brian Carroll's actions. But apropos of Judge McKeek's question, when you sublimate, do you print different sizes? Do you print them individually as opposed to doing a roll of fabric? Is that how sublimation works? Sublimation is a process that first ink is applied to paper, and then the ink is heated, and then there's a gaseous transfer when that heated piece of paper with the ink on it is applied to the garment. Certainly it's done in different sizes. The question, and it gets back, we've talked about paintings and whatnot, and that may not be the best example, but do your designs have any value unless they're put on something? Yes, they do, Your Honor. And what would you sell? The Modriani obviously could sell the painting, but what would you sell if you didn't put it on something? Well, the declaration of Ms. Scafidi points out that these things can be placed on iPod, iPhone covers, tote bags, and other items like that. But that's putting them on something. Well, it's applying them to the surface of something, just like the surface of an iPhone. We're doing the same thing here. We're applying these to the surface of the uniform from which they can be, and this is important, can be conceptually separated. Do we look to the question of whether you've ever done that or simply whether you could do that? Your Honor, it's a question of whether we could do that. Just out of curiosity, have you ever sold these cheerleading designs for something other than a cheerleading uniform? Jackets. All cheerleading attire. I think that's correct, Your Honor, but as Ms. Scafidi pointed out, it could be done in other places. The court doesn't have to take Ms. Scafidi's word for it or my word for it, but a simple Google search would lead the court to just scores of uses of cheerleading designs, just like these in question here, on mugs, on tote bags, on iPhone covers and the like. So they can clearly be marketed on other items that are not cheerleading items. So is it sort of like any sports team has, like the Cavaliers or the Indians have their own designs? Yes, on their uniforms. And they sell all sorts of stuff that have... All sorts of stuff, yes, Your Honor. But that gets in the trademark, doesn't it? Well, there can be... That's another field. I mean, you can't copy somebody's logo exactly because they've probably got that trademarked. Well, that's correct, you can't, but some of these species of intellectual property can be covered by both. They can be both trademarks serving a source-identifying function and they can be copyrighted. Here we don't claim that these copyrighted designs function as trademarks. We're not making that claim here. And you just used the word source-identifiable. Yes. Is that what the district judge and your opponents are basically saying is being done here, that the particular design of a particular team's cheerleading team's uniform identifies a source in a sense? It identifies them as a particular cheerleading team. Is that suggestive that maybe trademark law is involved or should be involved? Well, with the trademark, the question would be whether or not the... which we're not arguing, by the way. Right. But if we were talking trademark, the question would be, can this design, which appears on the surface of the uniform, has it through use and sales and consumer acceptance reached the point at which it has come to signify the producer of that item as the source of that item? Has it acquired distinctiveness, if you will? Has it acquired a secondary meaning? But we're not claiming that. We are claiming what they are claiming we are not. They are claiming that our copyrighted designs perform a team identity function, and for that reason they are utilitarian, functional, and hence non-separable from the uniforms on which they appear. But again, Judge Brown made it very clear that the fact that the design, that the copyrighted material would evoke in the viewer concept of cheerleading, concept of cheerleading uniformness, that you belong to a certain team, that's just not part of the inquiry. And further... Thank you both for your argument. The case will be submitted. Would the court call the next case, please?